In re CORRUGATED CONTAINER
ANTITRUST LITIGATION.

ATLAS CONTAINER CO., INC., et al.,
Plaintiffs-Appellees,

CFS Continental, Inc., et al.,
Plaintiffs-Appellants,

v.

ALTON BOX BOARD CO., et
al., Defendants,

Olinkraft, Inc., Container Corp. of America, et al., and Great Northern Packaging Corp., et al., Defendants-Appellants.

In re CORRUGATED CONTAINER
ANTITRUST LITIGATION.

ATLAS CONTAINER CO., INC., et al.,
Plaintiffs-Appellees,

Great Northern Packaging Corp., et al.,
CFS Continental, Inc., et al.,
Plaintiffs-Appellants,

v.

ALTON BOX BOARD CO., et
al., Defendants,

Container Corporation of America, et al.,
Defendants-Appellants-Appellees.

Nos. 80–1476, 80–1521.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 29, 1981.

See also, 5th Cir., 659 F.2d 1330, 643 F.2d 195.

---

W. Donald McSweeney, Thomas P. Luning, Janet M. Koran, Schiff, Hardin & Waite, Chicago, Ill., for defendant-appellant The Continental Group, Inc.

David T. Hedges, Jr., Vinson & Elkins, Houston, Tex., for defendant-appellant Inland Container Corp.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Richard M. Clinton, Bogle & Gates, Seattle, Wash., for defendant-appellant Longview Fibre Co.

William A. Stearns, Quarles & Brady, Milwaukee, Wis., for defendant-appellant Menasha Corp.

Robert J. Malinak, Baker & Botts, Houston, Tex., Kenneth S. Haberman, Gottlieb & Schwartz, Chicago, Ill., for defendant-appellant Stone Container Corp.

John H. Morrison, Kirkland & Ellis, Chicago, Ill., for defendant-appellant Weyerhaeuser Co.

Aram A. Hartunian, Marshall Patner, Pressman & Hartunian, Chicago, Ill., for Great Northern Packaging Corp. and Huron Packaging Corp., plaintiff-appellants.

James B. Sloan, Sloan & Connelly, P. C., Chicago, Ill., Guido Saveri, Saveri & Saveri, San Francisco, Cal., Phillip C. Goldstick, Goldstick & Smith, Chicago, Ill., Leonard Barrack, Barrack, Rodos & McMahon, Philadelphia, Pa., Joseph A. Ginsburg, Levin, Ginsburg & Novoselsky, Chicago, Ill., Granvil I. Specks, Perry Goldberg, Gary L. Specks, Specks & Goldberg, Ltd., Ellis Sostrin, Sostrin & Walner, Chicago, Ill., Robert H. Weir, Law Offices of Robert H. Weir, San Jose, Cal., Michael J. Freed, Lawrence H. Eiger, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiff-appellant Container Purchasers.

H. Laddie Montague, Jr., Alan C. Kessler, Berger & Montague, P. C., Philadelphia, Pa., Lawrence J. Hayes, Maun, Green, Hayes, Simon, Murray & Johanneson, St. Paul, Minn., on behalf of the Sheet Plant Subclass plaintiffs-appellees.

Stephen D. Susman, Houston, Tex., Vance K. Opperman, Minneapolis, Minn., Allen D. Black, Philadelphia, Pa., Marc M. Seltzer, Los Angeles, Cal., Jerry S. Cohen, Washington, D. C., David W. Robertson, Alexandria, La., Mandell & Wright, Houston, Tex., McGovern, Opperman & Paquin, Minneapolis, Minn., Fine, Kaplan & Black, Philadelphia, Pa., Corinblit, Shapero & Seltzer, Los Angeles, Cal., Kohn, Milstein & Cohen, Washington, D. C., Gravel, Barnes & Robertson, Alexandria, La., on behalf of plaintiffs' Steering Committee.

John J. McHugh, David E. Bennett, Mary Dahlberg Jackson, Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., Chicago, Ill., for Container Corporation of America and also on behalf of Green Bay Packaging, Inc., MacMillan Bloedel, Inc., Olinkraft, Inc., Owens-Illinois, Inc., St. Joe Paper Co., Stone Container Corp., U.S. Corrugated Fibrebox Co., Weyerhaeuser Co.

Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.

PER CURIAM:

These consolidated appeals attack the settlements in this multidistrict antitrust action between the plaintiff classes of corrugated container purchasers and corrugated sheet purchasers and twenty-four defendants who manufacture corrugated products. We affirm the judgment of the district court.

There are three groups of appellants in this proceeding: certain settling defendants,[1] several dissident[2] sheet purchasing plaintiffs,[3] and several dissident container purchasing plaintiffs.[4] There are also three

1. The Continental Group, Inc., Inland Container Corp., Longview Fibre Co., Menasha Corp., Stone Container Corp., and Weyerhaeuser Co.

2. By "dissident" we mean only that these members of their respective subclasses dissent from the action taken by the representatives of those classes.

3. Great Northern Packaging Corp. and Huron Packaging Corp.

4. CFS Continental, Inc., Harold Freund Baking, Harold Freund Baking Co. of San Jose, Harold Freund Baking Co. of Florida, Harold Freund Baking Co. of Hawaii, Inc., Barg & Foster, Inc., Melster Candies, Inc., Allied Van Lines, Inc., Townhouse Furniture, Penthouse Furniture, Ltd., Denver Meat Co., West Coast Farms, Inc., Sierra Meat & Produce Co., Inc., Moyer Chemical Co., Andre-Boudin Bakeries, Inc., Wittek Golf Supply Co., Inc., Carron Manufacturing Co., Ilikon Corp., Rossville Packing Co., Erie Seating Packing Co., A.J.P. Foods Products Co., and D.O.B. Food Products Co.

groups of appellees: the container purchaser subclass, the sheet plant subclass (purchasers of corrugated sheets), and certain (other) settling defendants.[5] The background of this litigation is detailed in a previous opinion.[6] We add here only those facts necessary to an understanding of our present appeal. The class consisting of all purchasers of corrugated containers and sheets was certified on September 6, 1978. By this time, two defendants had already settled with the representatives of the proposed class. Discovery in the civil action was stayed pending a criminal investigation by a federal grand jury. The grand jury returned misdemeanor and felony indictments, and the district court scheduled the criminal trial for January 22, 1979. As that date approached, many more defendants chose to settle with the plaintiff class. By December 26, 1978, nine additional settlements were reached. On that date, the district court (by its own description: "out of an abundance of caution") created a subclass of plaintiffs who purchased corrugated sheets. This subclass was reluctant to enter into any settlements until its representatives could ascertain the range of damages possibly or probably recoverable. Several other defendants were interested in settling before the criminal trials began, but were interested only in settling with all of the plaintiffs. In order to take advantage of the favorable climate for settling, the Plaintiffs' Steering Committee for the container class negotiated eleven of the most lucrative settlements between January 5 and 22, 1979, totaling $220 million. Of this total, a maximum of $14.9 million was designated for the sheet plant plaintiffs' subclass, should that class choose to participate in the settlement. That subclass did eventually apply for $11 million of this so-called set aside fund, and the district court allocated this amount to them.

In the spring of 1979, some non-settling defendants began to assert cross-claims against settling defendants for contribution. On December 21, 1979, the district court gave final approval to these settlements despite the objections of some plaintiffs and some defendants.

The three groups described above who have appealed the final approval order have raised six issues. Recent decisions of the United States Supreme Court and of this court have made disposition of these issues less difficult than would otherwise be the case.

■ Certain settling defendants argue that the district court disregarded their rights in approving the settlements when it was unclear whether non-settling defendants would be able to assert claims against them for contribution under the federal antitrust laws. These defendants also claim that their settlements would be voidable under doctrines of commercial frustration and failure of consideration, and under a strict construction of the agreement itself, should such a right of contribution be recognized. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, —— U.S. ——, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), held that there is no right to contribution under the federal antitrust laws in favor of a defendant against his co-conspirators. Thus, these objections by these certain settling defendants, being based entirely upon the possibility that a right to contribution under the federal antitrust laws would be recognized, have been deprived of their foundation. The objections were properly overruled.

■ The dissident sheet plant plaintiffs have raised three issues. First, they argue that the parties designated to represent their subclass were inadequate because these parties' interests were different from those of the class, and that the district court failed to consider this inadequacy. It is asserted that the representatives of the sheet plant subclass, Atlas Container Company and Rollins Container, Inc., operated both as container purchasers and sheet

---

5.  Container Corp. of America, Green Bay Packaging, Inc., MacMillian Bloedel, Inc., Olinkraft, Inc., Owens-Illinois, Inc., St. Joe Paper Co., Stone Container Corp., U.S. Corrugated Fibrebox Co., Weyerhaeuser Co.

6.  *See In re Corrugated Container Antitrust Litigation, Adams Extract Co. v. Chesapeake Corp. of Virginia*, 643 F.2d 195 (5th Cir. 1981).

plants and that because of this status they could not adequately represent the sheet plant subclass in determining to apply for the set aside fund negotiated by the container purchaser subclass. This argument is even less persuasive than the similar contention rejected in *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981) (*Adams Extract*).

*Adams Extract* considered the objections of certain sheet plant dissidents that "the pre-January 5, 1979, settlements, covering both classes, were negotiated by attorneys representing container purchasers only, and that those attorneys subordinated the interest of sheet plants to the interest of their clients." *Id.* at 207. There, we held that the alleged conflicts of interest did not infect the pre-January 5 settlements. The challenge of inadequacy in the instant appeal differs from that in *Adams Extract*. Here there is no allegation of a conflict of interest, for the sheet plant plaintiffs had their own representatives by this time. The alleged error is based only on inadequacy. As we said in *Adams Extract*, the proof of adequate representation is in the adequacy of the settlements. *Id.* at 212. As determined below, the settlements were adequate.

■ Second, the sheet plant dissidents argue that there was no rational basis for the surrender of their claims. Third, they claim that the district court's basis for approval of the settlements was inadequate. These arguments address the three-part test set out in *Adams Extract*: the district court must estimate damages, estimate likelihood of recovery, and then exercise its discretion to determine whether the settlements are fair, adequate, and reasonable. Pursuant to a remand order of this court in *Adams Extract*, the district court, on June 4, 1981, entered additional findings of fact and conclusions of law concerning the pre-January 5 class action settlements. The district court found that the $14.9 million set-aside amount bore the same relation to the total settlement fund as the dollar value of corrugated sheets sold by the eleven defendants participating in the post-January 5 settlements bore to all corrugated material sold by them. Further, sheet plants pur-chased 72% of all corrugated sheets sold, thus justifying the $11 million actually allotted, which is 73.8% of $14.9 million. The district court's estimate of damages is sufficiently detailed to permit review. It disposes of the dissidents' argument that there was insufficient investigation into the range of the sheet plants' damage.

As for likelihood of success on the merits, the district court described testimony in the related criminal trial indicating that "purchasers of corrugated sheets were overcharged to a lesser extent than purchasers of corrugated containers." The district court also made findings regarding the container class' likelihood of success in general and against each individual defendant. These findings are sufficiently detailed to permit review, *see In re Corrugated Container Antitrust Litigation*, issued this day, 659 F.2d 1322 (5th Cir. 1981) [Nos. 80–1018 and 80–1103, Oct. 29, 1981]. Most of those findings apply to the sheet plant subclass' likelihood of prevailing. The additional findings also describe in detail the negotiations surrounding the creation of the $14.9 million set aside fund. The district court noted that only one member of the sheet plant subclass filed a timely objection to the sheet plant subclass' application for the allocation of $11 million from this set aside fund. These factors are relevant to the approval process. Thus, we have sufficient findings to allow us to review the district court's exercise of discretion in approving the sheet plant settlements. Our task is limited to reviewing the approval of the settlements for an abuse of discretion. *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971). Since approval was so clearly indicated by the findings made, the approval was well within the ambit of the district court's discretion.

Finally, some dissident container purchaser plaintiffs complain that the district court erred in approving $11 million for the sheet plant plaintiffs because this sum was too large and prejudiced the container purchasers. This argument was raised and rejected in *Adams Extract*, 643 F.2d at 210. It is likewise rejected here.

Applying *Adams Extract*, we hold that the sheet plant plaintiffs were adequately represented in the post-January 5 settlements, that the district court made adequate findings regarding the settlements, and that the district court did not abuse its discretion in finding that the settlements were fair, adequate, and reasonable. *Texas Industries* and *Adams Extract* demonstrate that the objections of certain settling defendants and the dissident container purchasers are without merit. The judgment of the district court is

AFFIRMED.