Fernando GIUSTI–BRAVO, William Zapata–Sanchez, Ruben Santiago–Mercado and Vietnam Veterans of America, Plaintiffs,

v.

UNITED STATES VETERANS ADMINISTRATION and Administrator of Veterans' Affairs, Defendants.

Civ. No. 87–0590CCC.

United States District Court, D. Puerto Rico.

Oct. 15, 1993.

Barton Stichman, Washington, DC, for plaintiffs.

John R. Tyler, Dept. of Justice, Civ. Div., for defendants.

## OPINION AND ORDER

CEREZO, Chief Judge.

This is a putative class action filed by Vietnam Veterans of America, Inc., a veterans service organization, and veterans from Puerto Rico and the Virgin Islands, who allege that their federal veterans disability benefits for mental disorders were improperly reduced by the former Veterans Administration, now the Department of Veterans Affairs (DVA), beginning in January 8, 1982. They specifically claim that they were all rated 100% disabled due to neuropsychiatric conditions until the DVA started what they describe as a systematic and massive review of their disability ratings which resulted in their reduction with the consequential loss of benefits. Plaintiffs have challenged this mass review based on constitutional, statutory and regulatory grounds in a complaint filed on May 5, 1987.[1] Defendants, the DVA and its secretary, have denied that they acted illegally in conducting the reviews.

On July 1, 1991, the attorneys for the parties filed a Stipulation and Order (docket entry 71) which has since been twice amended (see docket entries 466 and 471), in which they announced the terms of a proposed settlement and requested the Court's approval. After a careful review of the agreement, we entered an order on December 27, 1991 (docket entry 72) preliminarily approving it for the purpose of notifying the members of the putative class and scheduled a fairness hearing for April 20, 1992. Pursuant to that order, a summary of the agreement and notice of the hearing were mailed by defendants to all class members.

Prior to the hearing, the Court received written objections from nearly 300 persons, the overwhelming majority of which were probably putative class members.[2] At the hearing, the Court heard the testimony of Mr. Jorge Pedroza, who served as spokesperson for most of the objecting veterans. Those objectors who were not represented by Mr. Pedroza were given the opportunity to testify. Several veterans exercised this option, among them Mr. Juán Avilés, Mr. Angel R. Cabiya–San–Miguel, Mr. Saúl Gonzalez–Reyes, Mr. Serafin Meléndez–Adorno, Mr. Jesús Pérez–León, Miss Carmen Rosado–Rosas and Mr. Ramón E. Cáceres–Medina. At the conclusion of the hearing and in view of the testimony presented, the parties were ordered to clarify some provisions of the stipulation. That stipulation is now before the Court.

### I

It is the general public perception that in actions such as this, a complex class action involving prolonged litigation, settlements are strongly favored by the courts

---

1. An amended complaint was filed on April 14, 1988 (docket entry 32).

2. Up to docket entry 464, which was the last objection filed in compliance with the April 10, 1992 deadline for submitting objections, the Court had received objections from 277 individuals, some of whom filed more than one (see e.g., docket entries 75, 78, 81, 85, 88, 128, 136, 169, and 197, which are all objections submitted by Mr. Rubén Santiago–Mercado). In their memorandum in support of the stipulation, however, plaintiffs' attorneys state that a total of 299 individuals submitted objections to the settlement, 22 more than those identified by the Court. Of those 299, they claim that 56 are not members of the putative class. (See docket entry 466, p. 26).

because they represent the easiest, and quickest, way of disposing of the case. However, it is precisely in this type of action that courts develop a heightened awareness of their special responsibility to the parties and, in particular, to those class members on whose behalf the claims were originally brought. Instead of their traditional role as adjudicators in the ordinary adversarial confrontation, they must act as guardians for class members who have not received notice or who may lack the intellectual or financial resources necessary to press objections. *Weinberger v. Kendrick,* 698 F.2d 61 (2nd Cir.1982). It is precisely because of this that, in evaluating the propriety of a proposed class action settlement, the courts are required to make an inquiry to determine whether the proposal, taken as a whole, is fair, adequate, reasonable and in the best interests of all those who will be affected by it. Wright, Miller and Kane, *Federal Practice and Procedure:* Civil 2d § 1797.1, *In re Corrugated Containers Antitrust Litigation,* 643 F.2d 195 (5th Cir.1981), *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975).

 In determining whether a settlement is fair, reasonable and adequate, we do not act in a vacuum. Several factors have already been identified that must be taken into consideration by the courts when making the inquiry. Among them are the likelihood of recovery, or likelihood of success on the merits; the amount and nature of discovery or evidence; the settlement terms and conditions; the recommendation and experience of counsel; the future expense and likely duration of litigation; the recommendation of neutral parties, if any; the number of objectors and the nature of objections; the presence of good faith and the absence of collusion. 2 H. Newberg, *Newberg on Class Actions* § 11.43 (1992). We have carefully reviewed the settlement proposal before us with these factors in mind and reach the following conclusions.

**3.** Defendants' motion to dismiss was denied by the Court on March 27, 1989 (docket entry 49),

## II

### A. The likelihood of success on the merits.

 In applying this factor, the court is required to judge the fairness of the proposed compromise by evaluating the probable outcome of the litigation and the terms of the settlement and by weighing the remedies the class could secure from it against the probable costs and results of continued litigation. *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981), *Grunin v. International House of Pancakes, supra.* In doing so, however, we are not to decide the merits of the case or resolve unsettled legal questions. *Carson, supra,* at p. 88, n. 14, at p. 998, n. 14.

As stated before, this case presents a constitutional, statutory and regulatory challenge to the mass review conducted by the DVA in the early 1980's, and to the standards and procedures used during that review. In essence, plaintiffs' allegations are that the decision to review and the standards applied violated their rights to equal protection of the laws guaranteed by the Due Process Clause of the Fifth Amendment, and infringed specific provisions of the Administrative Procedure Act, the Freedom of Information Act, and several DVA regulations. Defendants have denied all liability, claiming that all their actions were taken in accordance with the applicable law. At the time the settlement proposal was submitted, four years after the filing of the complaint, the parties were still engaged in active discovery.

Having considered the multiple factual and legal contentions set forth in the voluminous record of this action, it appears that, were the settlement now pending rejected by the Court, plaintiffs could very well face a long and winding road toward trial and almost insurmountable obstacles in attempting to obtain a more comprehensive relief than the one provided in the stipulation agreement.

We note at the outset that defendants have challenged the Court's jurisdiction to entertain the claims made by plaintiffs (*see* Defendants' Motion to Dismiss Plaintiffs' Claims, docket entry 13), and the matter still has not been fully addressed by the court.[3] Defen-

upon our adoption of the Magistrate's Report and Recommendation of May 12, 1988 (docket

dants have based their claim primarily on the provisions of 38 U.S.C. § 211(a), later recodified as 38 U.S.C. § 511(a), which establishes that any decision of the Administrator of the Veterans Administration as to questions of law and fact necessary to the provision of benefits shall be final and conclusive and may not be reviewed by any other official or by any court. Although the extent of the prohibition against judicial intervention in DVA benefit decisions appears to have been diluted by the interpretation given to the statute by the courts, *see Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (holding that district courts have jurisdiction to entertain constitutional attacks on the operation of the DVA claims system), *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 311 n. 3, 105 S.Ct. 3180, 3184 n. 3, 87 L.Ed.2d 220 (1985) (same), it is generally accepted that the review of decisions of law or fact concerning the administration of VA benefits is barred to the courts. Whether this prohibition applies in the particular case of the claims raised by plaintiffs is not a matter for us to decide here; suffice it to say that plaintiffs' own attorneys have candidly accepted that there is uncertainty regarding how this issue would ultimately be resolved. (*See* Plaintiffs' Memorandum in Support of Approval of the Proposed Stipulation and Order Settling this Action, docket entry 466, p. 19).

Even were we to assume that the jurisdictional issue would be resolved in plaintiffs' favor, they would still need to surmount another hurdle: the burden of proving their claims at trial. In this regard, we initially note the heightened standard of proof required to prevail on a discrimination claim brought under the Equal Protection Clause of the Constitution, under which it would not be enough to merely establish that the mass review conducted by the DVA had a "racially disproportionate impact" over the veterans of Puerto Rico and the Virgin Islands. Instead, plaintiffs would be required to show that a discriminatory purpose was a *motivating* factor in the DVA's decision to conduct a mass review, as well as in their application of the relevant standards used in the reviews.

*Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), *Vil. of Arlington Hts. v. Metro Housing Dev.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). The evidence proffered by the parties shows that if this case went to trial the plaintiffs would have a difficult time proving their claim of discrimination. Although we acknowledge that the evidence tends to support the claim that the DVA's actions had a disproportionate impact over veterans in Puerto Rico and the Virgin Islands, the question is extremely close as to whether the motivating factor behind those actions was a purpose to discriminate. Given this situation, it would be hard to predict at this time that plaintiffs would be able to prove their claim of discrimination.

There are other significant considerations as well. Were plaintiffs to prevail at trial, the issue would then turn to what kind of remedy would be provided by the Court in recognition of their meritorious claim. In this regard, we note that the specific remedies requested in the complaint are: that the Court declare as unlawful all the reductions and denial of increases of the disability ratings, and the denial of pension claims, that have taken place since January 1982 (*see* amended complaint, docket entry 32, pp. 27–8, ¶ (b); that defendants be enjoined from intervening in the adjudicative process of the boards located in Puerto Rico (*id.,* ¶ (c)); and that defendants be ordered to reinstate retroactively all the disability ratings reduced as a result of the mass review conducted, with the corresponding backpay of the lost compensation. Of all these remedies, it is certainly the last one, of a compensatory nature, that generates more interest in the plaintiffs' class. Nonetheless, we harbor serious doubts as to whether we would be able to grant such a remedy, as we have found no legal authority to base such an action. *Cf. Pappanikoloaou v. Administrator of Vet. Admin.,* 762 F.2d 8, 9 (2nd Cir.1985), *Kirkhuff v. Nimmo,* 683 F.2d 544 (D.C.Cir.1982). The parties seem to agree that the most we

---

entry 34) that recommended it be denied *without prejudice* to allow the plaintiffs to conduct discov-

ery so that they could develop facts supportive of their claims.

could do in this regard is to remand the matter to the DVA so that they could re-rate the veterans on a case by case basis using appropriate standards and procedures. *Compare* Defendants' Memorandum in Support of the Proposed settlement of Plaintiffs' Class Claims, docket entry 465, p. 8; Plaintiffs' Memorandum in Support of Approval of the Proposed Stipulation and Order Settling this Action, docket entry 466, p. 24. This is, precisely, the kind of relief provided to the entire class in the stipulation.

In view of the above, it seems evident that plaintiffs' likelihood of succeeding in their claims is uncertain at this stage, with the added risk that, even if they eventually prevailed, they would most likely be unable to recover more than what the settlement stipulation already offers them. Under those circumstances, approval of the stipulation seems to afford the entire class the quickest, surest remedy to their claims since under it the putative class would receive benefits fully commensurate with any results reasonably attainable after protracted litigation.

### B. The amount and nature of discovery.

The Court is also required to ascertain whether sufficient evidence has been obtained through discovery to allow a determination of the adequacy of settlement. It appears from the record that plaintiffs' attorneys were extremely diligent in conducting discovery, and that at the time the settlement agreement was reached an extensive amount of discovery had already been completed. Given the nature of the action, however, it is probable that substantial discovery still remains to be conducted. Nonetheless, we feel that the amount of discovery conducted so far was sufficient to permit an accurate assessment of each party's chances at trial, *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2nd Cir.1982), reflecting both their strengths and weaknesses. Moreover, the record further evidences that all discovery was conducted in a truly adversarial manner. *Cf. Saylor v. Lindsley,* 456 F.2d 896 (2nd Cir.1972). Under this factor, then, there are simply no grounds that could justify disapproval of the stipulation submitted by the parties.

### C. The settlement terms and conditions.

The Court is also required to make a determination that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants. At first glance, that seems to be the case here, inasmuch as the stipulation submitted certifies a broad class of plaintiffs, mandates the immediate rescission of BVA's San Juan Memorandum 82–3, the alleged basis for the mass review conducted, and affords the class members an opportunity to have their ratings re-adjudicated pursuant to national standards and in accordance with the procedure painstakingly spelled out in the agreement. The stipulation also provides special benefits to some members of the certified class, namely those that did not appeal their rating reduction to the Board of Veterans Appeals (BVA) or whose rating reduction was not affirmed by the BVA prior to February 25, 1990, equivalent to the payment of benefits at the 100% rating level for a limited period of time. In addition, the stipulation requires the DVA San Juan Regional Office to establish a tickler system to avoid delays in the docketing of appeals at the BVA.

As noted before, the Court requested the parties to clarify several items of the stipulation which were deemed relevant to the inquiry of fairness and reasonability. We first noted that the class is described in the stipulation as composed of veterans who were rated 100% neuropsychiatric disabled prior to the reviews conducted by the DVA, and whose ratings were later reduced as a consequence of these reviews and never restored, while the amended complaint also included as part of the putative class those veterans whose NP disability ratings before the reductions were less than 100%. In view of the discrepancy, we asked for an explanation on the more restrictive definition of the class adopted in the stipulation. We also observed that the stipulation established a sub-class of veterans—those that never appealed their rating decisions to the Board of Veterans Appeals (BVA) or whose appeal was not decided by February 15, 1990—who were entitled to receive special settlement benefits. The rationale for such a disparate treatment

between sub-groups of the same class had to be addressed. We questioned the period of ninety (90) days allowed to the class members to decide whether to decline participation in the special settlement review as being too short. We also noticed an apparent inconsistency in two provisions of the stipulation, when one excluded the San Juan, Manila, Anchorage and Honolulu regional offices from participating in stage one of the settlement review (*see* ¶ 16), while another did not bar them from conducting hearings on notices of disagreement with the original decisions filed by the class members (*see* ¶ 19). Finally, we asked the parties to explain how often and for how long the request of an advisory opinion could delay the docketing of an appeal at the BVA, inasmuch as it was expressly recognized in the stipulation as a good faith reason for delay of an appeal (*see* ¶ 28(e)).

The parties complied with our order by filing memoranda explaining their respective positions on these matters (*see* Plaintiffs' Response to the Questions Posed by the Court at the Fairness Hearing, docket entry 468, Defendants' Response to the Court's Questions Regarding the Proposed Stipulation and Order (docket entry 470)). With regard to the first issue, the parties stated that the definition of the class was reviewed to exclude those veterans whose disability ratings were lower than 100% before the mass review, inasmuch as the discovery conducted in the case revealed that the discriminatory mass review alleged in the complaint affected only those veterans whose ratings were 100% NP disabled. In comparison, those veterans who were rated at less than 100% had their ratings reviewed as a result of the routine process by which the DVA periodically reviews the disability ratings of individual veterans, not as a result of the special mass review program. We are satisfied by the parties' explanation, and find that the definition of the class adopted in the stipulation is adequate in light of the claims originally raised in the complaint.

The parties also clarified the rationale behind the establishment of a sub-class of veterans entitled to receive special settlement benefits. They explained that those veterans who had their 100% disability ratings reduced and then appealed to the BVA, where the original rating reduction was affirmed, had their claim of discrimination weakened inasmuch as it is asserted that the BVA, in affirming those reductions, supposedly did not rely on any discriminatory standards, applying instead the regular standards used in the adjudication of cases before it. Those veterans who never appealed, or whose appeals were not decided by a certain date, to the contrary, did not have their legal claim weakened by the action of the BVA and, as such, special benefits were provided to recognize their more colorable claims. In view of this, the Court considers that the fact that this particular segment of the class is treated differently for this limited purpose does not defeat the overall fairness of the relief obtained in the agreement.

The issue raised regarding the 90–day deliberation period for deciding whether to participate in the special settlement review has been rendered moot, inasmuch as the parties have agreed to extend the period and provide class members with 180 days to make the decision. The Court considers this extended period of time to be reasonable in light of the circumstances of the case.

The parties have also explained to our satisfaction the exclusion of several regional offices, among them the one in San Juan, from having participation in the initial stages of the special review provided in the agreement, vis a vis their non-exclusion from intervening in later stages of the proceedings. It is evident that different concerns are present at the various stages, and these were adequately taken into consideration by the parties.

Finally, upon reviewing the explanation of the parties as to the last issue raised, we have no quarrel with the recognition made in the agreement that a request for an advisory opinion could constitute a good faith reason for delay in the docketing of an appeal at the BVA. It appears that, in view of the relevant DVA regulations, reliance on this exception will actually never take place.

Having considered the terms of the stipulation, as further clarified by the parties upon our request, the Court finds that the

same does secure substantial benefits for the class in return for the premature surrender of their litigation rights.

### D. The recommendation and experience of counsel.

■ The Court must also take into account the recommendation of counsel, but the weight accorded to it is dependent on a variety of factors, among them the length of their involvement in the litigation, their competence, and their experience in this particular type of litigation. 2 H. Newberg, *Newberg on Class Actions* § 11.47.

The record of this action also reflects that counsel for the class, attorneys from the National Veterans Legal Services Project, are all experienced litigators in the area of veterans law,[4] and have been, without a doubt, able and vigorous class representatives during the six years that this case has been litigated in our Court. There is no suggestion in the record of any collusion between class counsel and defendants' counsel and, in any event, the Court finds none. It also appears that the attorneys made several attempts to discuss the terms of the proposed stipulation with the class before submitting the final stipulation to the Court for approval. (*See* docket entry 466, Exh. A, pp. 2–5). They now strongly urge us to approve the settlement submitted. In view of the fact that competent and experienced counsel have been able to conduct ample discovery which allowed them to properly assess the probability of success on the merits of the putative class claim, and, after doing so, participated in arms-length settlement negotiations that resulted in a compromise they consider is well-advised and necessary, we feel their recommendation should be entitled to substantial weight in the final determination of whether this stipulation should be approved.

### E. The future expense and likely duration of litigation.

Although this action has already been litigated for six (6) years, the parties agree that

were the stipulation not approved now many more would indeed come to pass before a final decision is taken on plaintiffs' claims. For one thing, substantial discovery still remains to be conducted. In addition, the trial is expected to be complex and lengthy; a conservative estimate is that a minimum of two weeks will be necessary. Once the proceedings in this court are completed, upon the issuance of our opinion and judgment, it is extremely likely that the losing party will take recourse to the appellate court, where a final decision could take months. Obviously, the expenses incurred in such a prolonged litigation are enormous, which, considered in conjunction with its attendant risks, constitutes one of the strongest arguments in favor of approval of the settlement.

### F. The recommendation of neutral parties.

The Court has not received any recommendation from third parties concerning the stipulation now before it. Although the record shows that, in the past, the Commonwealth House of Representatives through its former Speaker, José R. Jarabo, and the Office of the Governor, through its Advocate for Veterans Affairs, appeared to have been involved in some stages of the negotiation process, no final recommendations were presented to the Court on their behalf. Accordingly, we will not consider this factor in our evaluation of the stipulation submitted.

### G. The number of objectors and the nature of objections.

■ Another indication of the fairness of a class action settlement is the lack of, or small number of, objections. *Hammon v. Barry*, 752 F.Supp. 1087, 1093 (D.D.C.1990). However, the fact that there is a large number of objections does not necessarily mean that the settlement is unfair or unreasonable and that approval of the stipulation should be withheld. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975). *See also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir.1977). The Court must give consideration not only to the number, but also to the nature, of the objections.

---

4. *See* the resumes of Messrs. Barton F. Stichman, Michael E. Wildhaber, and Mark A. Venuti, submitted as an exhibit to Plaintiffs' Memorandum in Support of Approval of the Proposed Stipulation and Order Settling this Action, docket entry 466, ex. A. pp. 8–11 and Attachment 2.

We have closely reviewed the objections to the settlement filed by dozens of members of the putative class. As stated before (*see infra.* note 2), 277 individuals submitted objections on or before the deadline established by the Court expired, out of a putative class of 708 veterans. Among the objectors are three named plaintiffs [5] out of the seven that originally filed the complaint.

Although the objections are varied, the gist of most of them is that the stipulation submitted is unfair to the plaintiffs' class allegedly because it still discriminates against them. Because of this, the objectors request that the case be allowed to go to trial, where they expect the Court to make an express finding of discrimination upon presentation of the evidence, and the granting of relief consisting in the retroactive and unconditional reinstatement of all the ratings and pensions unlawfully reduced. Mr. Jorge Pedroza, the objectors' spokesperson, aptly summarized the nature of most of the objections in a statement submitted to the Court on June 17, 1992,[6] where he stated:

> In the view of those opposing the settlement, the only acceptable course is for this Honorable Court to allow prosecution of this case to proceed and, after plaintiffs are allowed to prove their allegations to this Honorable Court's satisfaction, for this Honorable Court to order *all* benefits thus unlawfully terminated to be *automatically retroactively restored* to their previous levels, and award plaintiffs the corresponding damages for the violation of their constitutional (equal protection, due process, etc.) rights.

(Emphasis in original.)

As explained before, an objective assessment of the case shows that plaintiffs' claims are not as strong as they would want them to be, nor is the remedy they consider automatic upon prevailing as readily available as they would like us to believe. In any event, their rejection of the settlement is basically prem-ised, without more, in their refusal to sacrifice their possible, but mediate, total victory, for a certain and immediate relief. The essence of a settlement, however, is compromise. *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1322, 1325 (5th Cir.1981). Certainly, reasonable plaintiffs cannot expect to obtain, via a settlement agreement, the same kind of relief to which they would be entitled if they were to prevail after a full trial on the merits. The mere fact that the stipulation provides them with less relief than what could be attainable after trial is not sufficient reason, without more, to justify our disapproval of the stipulation.

Some veterans also object to the alleged continued use of DVA's San Juan Memorandum 82–3, which they claim established the discriminating standard of review later used in the mass revision. The Court notes, however, that the stipulation specifically provides for the immediate rescission of Memorandum 82–3. (*See* Stipulation, ¶ 12.) Another repeated objection was raised as to the alleged lack of consultation of plaintiffs' attorneys with the members of the class before submitting the stipulation for Court approval. The record shows, however, that periodic and meaningful consultations were in fact conducted with the members of the class by the attorneys in charge of the case. Most of the objectors also seem to disapprove the stipulation because it failed to provide for the removal of the DVA officers they claim were responsible for the alleged discriminatory treatment of which they were victims. A review of the amended complaint shows that this was not one of the reliefs requested. This is understandable given the fact, correctly pointed out by the parties, that in the circumstances of this case there is no legal basis for such a claim.

Some of the veterans also aver that, even though they are members of the putative class, they were never notified of the proposed settlement (*see i.e.* docket entry 378).

---

**5.** Mr. Fernando Giusti–Bravo filed two timely objections (docket entries 82, 318), Mr. Rubén Santiago–Mercado filed nine (*see infra,* note 2), and Mr. Héctor Rosario–Betancourt filed four (docket entries 74, 100, 164 and 228).

**6.** Although the statement, titled "Supplementary Motion as to Previous Objection to Settlement", was submitted after the deadline for filing objections had expired, and for this reason was not docketed, we nonetheless make reference to it as it is part of the record of this action.

The Court, however, is satisfied that the method utilized by the parties to give notice to the class members, the mailing of an informative letter to each of the putative class members' last known address and the publication of edicts in the local newspapers, was reasonably calculated to inform them of the latest development in this case. Objections were also raised to the stipulation's applicability, by virtue of the class definition adopted, to only those veterans whose neuropsychiatric disability ratings were 100% prior to the mass review. These were raised by some veterans who claim that although their NP disability ratings were less than 100%, they were also affected by the DVA's alleged illegal actions (*see* i.e. docket entry 385). As discussed before, (*see infra* p. 39), plaintiffs lack evidence to support a claim that the veterans who were rated at less than 100% before the mass review had their disability ratings reduced also as a result of the mass review program.

Many other objections were raised by the veterans in the myriad *pro se* motions filed by them in compliance with the deadline established by the court. Although we have here discussed the most salient, the objectors can rest assured that we have reviewed them all.

H. The presence of good faith and the absence of collusion.

No allegation of collusion or bad faith has been colorably made in this case, neither does the record support one. After having actively litigated the case for a period of two years (1987–1989), the parties, represented by well experienced counsel, spent another three years (1989–1992) negotiating a settlement they now recommend to the Court as fair, reasonable, well-advised and necessary. Being without grounds to second-guess their assessment, we find that their agreement was not a product of fraud or collusion.

### III

■ Having considered all the factors outlined above, the Court finds, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that the stipulation submitted by the parties is fair, reasonable and adequate.

Accordingly, it is hereby ORDERED that the same be and it is hereby APPROVED. Pursuant to the same, this action is hereby DISMISSED with prejudice with respect to the claims brought by the certified class and plaintiff Andrés A. Cruz–Troche. The Court, however, will retain jurisdiction to entertain any allegation that the terms of the stipulation have been violated, in accordance with its paragraph 32.

Judgment shall be entered accordingly.

**SO ORDERED.**