Ervin M. RAINES, Dale Frame, Selma Randle, Martin Lacquey, Claudie Smith, and James Delon, individually, and on behalf of a class of persons similarly situated, Plaintiffs,

v.

STATE OF FLORIDA, Harry K. Singletary, Jr., in his official and individual capacities as Secretary of the Florida Department of Corrections, Richard G. Kirkland, in his official and individual capacities as Superintendent of Holmes Correctional Institution, and Henry D. Alford, in his official and individual capacities as Assistant Superintendent of Holmes Correctional Institution, Defendants.

No. TCA 92–40311–WCS.

United States District Court, N.D. Florida, Tallahassee Division.

Nov. 21, 1997.

---

Peter M. Siegel, Randall C. Berg, Jr., Florida Justice Institute, Inc., Miami, Florida, for plaintiffs.

Susan A. Maher, Deputy General Counsel, Judy Bone, Assistant General Counsel, Department of Corrections, Tallahassee, Fl, for defendants.

## ORDER ON CLASS SETTLEMENT

SHERRILL, United States Magistrate Judge.

This case has been before me by consent of the parties and reference by the district judge. A fairness hearing was held on November 18, 1997, on the proposed settlement, doc. 132. Notice of this fairness hearing was given to all class members pursuant to Federal Rule of Civil Procedure 23(e), and class members were provided an opportunity to file comments and objections. A large number of objections and comments were filed and each of these has been carefully considered. Docs. 136–270. It is apparent from these objections and the representations of the parties that class members were given adequate notice and a fair opportunity to object.

When presented with a proposed settlement in a class action, the court has a heavy duty to ensure that any settlement is "fair, reasonable, and adequate" and that the fee awarded plaintiffs' counsel is entirely appropriate.[fn.]

[fn.] *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977) ("A 'mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law' will not suffice." (citing *Protective Committee v. Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968))); see also *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir.1983) ("[C]areful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.' " (citing *United States v. City of Miami,* 614 F.2d 1322,

1331 (5th Cir.1980))); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir.1978) ("The [class action] settlement process is more susceptible than adversarial adjudications to certain types of abuse ... requiring that the trial court evaluate [the fairness of] the class action settlement....")

*Piambino v. Bailey*, 757 F.2d 1112, 1139 and n. 68 (11th Cir.1985), *cert. denied. sub nom. Hoffman v. Sylva*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). However, in considering the fairness of a proposed settlement of a class action, the court must remember that "compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). "[A] 'just result is often no more than an arbitrary point between competing notions of reasonableness.'" *In re Chicken Antitrust Litigation American Poultry*, 669 F.2d 228, 238 (5th Cir.1982), *quoting In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322, 1325 (5th Cir.1981). The court should consider the likelihood of success on the merits, the complexity, expense, and duration of litigation, the judgment and experience of trial counsel, and objections raised to the settlement. *United States v. Board of Public Instruction of St. Lucie County*, 977 F.Supp. 1202, at 1205 (S.D.Fla.1997), *citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976).

■ Strictly speaking, only the parties to the settlement of a class action (plaintiffs, class members, and the settling defendants), have standing to object to the fairness of the settlement. *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 172 (5th Cir.1979), *cert. denied sub·nom., Iowa Beef Processors, Inc. v. Meat Price Investigators Association*, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). Therefore, the court's attention is primarily directed to the comments and objections filed by prisoners who claim that they are class members. Comments and objections of others have been considered, however.

■ Three major categories of significant objections were addressed at the fairness hearing. The first concerns *Waldrup* inmates. *Waldrup v. Dugger*, 562 So.2d 687 (Fla.1990) held that prisoners who committed their offenses between July 1, 1978, and June 1983, were entitled to have the Florida Department of Corrections apply to them the pre–1983 basic and incentive gain time statutes. Some of the objections to this proposed settlement are from prisoners who are *Waldrup* inmates. These prisoners contend that they have not been able to earn all of the gain time available under those statutes due to their disabilities. *E.g.*, doc. 216, filed by Stephen D. Causey.

At the hearing, counsel for Plaintiffs stated that none of the named Plaintiffs were *Waldrup* inmates, and the complaint did not allege violations of the ADA under the *Waldrup* scheme. This is correct. The issue of the application of the ADA to prisoners who earn gain time under the pre–1983 statutes was not addressed in the complaint. Plaintiffs alleged in their third amended complaint that they have been denied the opportunity to earn the maximum amount of incentive gain time afforded by statute due to their disabilities. Doc. 56, ¶ 1. They sought class certification as to the award of incentive gain time. *Id.*, ¶ 22. But the statute at issue was alleged to be Fla.Stat. 944.275(b) (1991). *Id.*, ¶ 30. The regulation at issue was that found in Chapter 33–11, Florida Administrative Code, and in particular, § 33–11.065(2), adopted in 1994. *Id.*, ¶¶ 32 and 41.

Consequently, *Waldrup* inmates are not class members and have no claims in this suit. While such persons may have ADA claims, the claims have not been litigated in this case. This case has been in litigation for seven years, and the time for amendment to expand the class has long past. The settlement is not rendered unfair by the exclusion of such claims.

■ The second category of prisoners who have objections to the proposed settlement are those in subclasses 2 and 3 who have been provided mental health treatment at the Corrections Mental Health Institute (CMHI), or who have been provided health care of any sort at a reception and medical center. The settlement provides for a retroactive award of incentive gain time to those prisoners, but only if the prisoner used or attempted to use the grievance system as to the denial of the gain time and if the prisoner contacted class counsel. Doc. 132, ¶ 13. While some of the objections would ordinarily be a basis for further inquiry,[1] a claim for retroactive gain time would very likely have failed in this § 1983 suit due to *Heck v. Humphrey,* 512 U.S. 477, 485–86, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok,* —— U.S. ——, ——, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997) (extending *Heck v. Humphrey* to an inmate's procedural challenge to a disciplinary hearing that resulted in the loss of gain time). Claims of this sort cannot be brought in federal court except by a petition for writ of habeas corpus after the exhaustion of state court remedies. Objectors who have not yet exhausted administrative and state court remedies would not be entitled to pursue a federal petition for writ of habeas corpus to restore lost gain time. Hence, this objection is not an impediment to the approval of this settlement.

■ A third category of objections is from prisoners in subclass 4, who are classified as medical grades 3 or 4 and contend they have not been assigned work which they can do so as to earn gain time. The court found on summary judgment that this subclass had been improvidently certified. While that ruling could be appealed by counsel for Plaintiffs, the settlement will preclude the appeal. But the disparate factual circumstances revealed in the objections demonstrates that decertification of this subclass was probably appropriate. The factual circumstances of these prisoners differ so greatly that class treatment would have been improper.

Finally, that these claims are lost in the settlement is insufficient reason to find the settlement to be unfair. Settlement is a process of compromise. Plaintiffs were able to obtain a rule change which will benefit these prisoners to some extent in the future. The change provides that if a prisoner grieves that his work or program evaluation has failed to consider his disability, the person responding to the grievance must consult with the Chief Health Officer for information as to the prisoner's capabilities. Doc. 132, ex. B, p. 7. In sum, the objections of subclass 4 prisoners are not sufficient to show that the settlement is unfair.

All of the other objections have been read and considered. None are sufficient to render this settlement unfair.

■ The settlement in this case works a number of major changes in the process by which incentive gain time is to be awarded in the Florida prison system. It establishes regulatory criteria by which inmates in the first three subclasses may earn the full amount of incentive gain time available notwithstanding their disabilities. It expands subclass 2 to include prisoners not only at the Corrections Mental Health Institute, but also those at Crisis Stabilization Units, Transitional Care Units, Hospital, or the Infirmary. Doc. 132, ex. B, p. 3. It provides for retroactive awards of gain time for subclass 1 and some members of subclasses 2 and 3, even though that relief was probably not obtainable in this suit. It has a provision that results in cessation of the settlement, in the discretion of the Defendant, if the premise of this suit, that the ADA applies to state prisons, is changed by governing precedent from the Supreme Court or by Congress.

The likelihood of success had this case gone to trial and appeal remains a debatable issue. The most recent case from the Eleventh Circuit, *Onishea v. Hopper,* 126 F.3d 1323 (11th Cir.1997) (*Harris v. Thigpen,* 941 F.2d 1495 (11th Cir.1991) after remand), does

---

**1.** For example, some of the objectors point out that mentally ill prisoners at the CMHI may not

have been competent to file a grievance or to contact class counsel.

not decide whether the ADA was meant by Congress to apply to prison programs. *Onishea* is instructive, however, for the majority's[2] rejection of the ruling in *Torcasio v. Murray*, 57 F.3d 1340 (4th Cir.1995), *cert. denied sub nom., Torcasio v. Angelone*, 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996), that the principles of deference set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) should not apply to a Rehabilitation Act[3] claim in the prison setting. *Id.* at 1335–36. The court's reasoning that the principles of *Turner v. Safley* ought not apply "without a congressional indication to that effect," *Id.*, reflects a faithful adherence to the plain language of the statute.[4] Underlying this ruling is an understanding that the ADA is a statute which should be implemented without added judicial gloss. It is not a rule of constitutional law, which depends entirely upon judicial decisions to determine its scope.

In sum, as to the most debatable issue in this case, whether the ADA applies, the court continues to be persuaded that it does, but certainty for both parties will not be had until the Supreme Court decides the question. At this stage, however, in light of the *Onishea* opinion, the degree of relief granted by Defendant to the Plaintiffs is justified. Settlement at least has the salutary effect of ending this protracted litigation without further cost to the parties. Further, once the issue is finally settled by the Supreme Court or Congress, if it is then determined that the ADA does not apply, the settlement will be voidable by Defendant. This is a fair resolution of the primary legal issue.

The court has also relied to a great extent upon the experience of counsel for the parties. Counsel for Plaintiffs has spent many years litigating questions concerning prison conditions, and his advocacy has always been of the highest quality. Counsel for Defendant is the most knowledgeable lawyer in Florida on the intricacies of gain time in the Florida prison system, and likewise her advocacy has always been of the highest quality.

For these reasons, it is **ORDERED** that the proposed settlement, doc. 132, is fair and is **APPROVED**. A copy of the settlement is attached to this order.

## ·APPENDIX

### *STIPULATION AND AGREEMENT OF SETTLEMENT*

WHEREAS the Third Amended Complaint herein was served on January 17, 1994, on behalf of plaintiffs and others similarly situated, alleging, *inter alia,* that defendants, in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, and Title II of the American With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131, *et seq.,* have deprived plaintiffs of the opportunity to earn incentive gain time solely as a result of their status as disabled or handicapped inmates; and

·WHEREAS, pursuant to Rule 23 of the Federal Rules of Civil Procedure, this action has been certified by the Court as a class action on behalf of all persons who are currently in the custody of the Florida Department of Corrections, or who, in the future will come into the custody of the Florida Department of Corrections, who are physically or mentally disabled or handicapped and who, because of their disability or handicap, are not provided with a job assignment, educational assignment, or other opportunity to earn the maximum available amount of incentive gain time available to all prisoners

---

**2.** Judge Cox dissented as to this question. *Id.* at 1351.

**3.** The analysis of a Rehabilitation Act or an ADA claim is basically the same as explained in the order on the motion for summary judgment.

**4.** It is also contrary to this court's ruling on this question on the motion for summary judgment, a ruling as to which this court now recedes.

eligible to earn incentive gain time. The class is further defined and limited to the following subclasses of such inmates:

1. Inmates who are classified X-5.

2. Inmates who are provided mental health treatment at the Corrections Mental Health Institution.

3. Inmates who are housed at a Reception and Medical Center for treatment.

4. Inmates who are classified medical grade 3 or 4 and who are impeded in the opportunity to earn incentive gain time due to the lack of a policy which directs that their disability be taken into account in determining the amount of incentive gain time to be awarded;

and

WHEREAS the defendants have filed an Answer denying the allegations in the Third Amended Complaint; and

WHEREAS, the Court ruled that the Defendants are entitled to summary judgment on the Eighth Amendment claim as the department's regulation was adopted to serve as an incentive for prisoners not to feign illness and to encourage work, rather than with an intent to punish and also ruled that the Defendants are entitled to summary judgment as to subclass four on the ADA and Rehabilitation Act claims as defendants have a written policy mandating that the capabilities of the prisoner must be considered in determining the incentive gaintime to be awarded and because no statistically significant disparity in the awards given prisoners classified as medical grades 3 and 4 was shown to exist; and

WHEREAS the signatories to this Stipulation and Agreement of Settlement (hereinafter "Agreement") represent that they are authorized to enter into this Agreement and to take all steps required of them by this Agreement; and

WHEREAS plaintiffs consider it desirable and in their best interests, and in the best interests of the members of plaintiffs' class, to settle the issues set forth herein by entering into this Agreement; and

WHEREAS defendants consider it desirable and in their best interests to settle the issues set forth in the Third Amended Complaint that remain after summary judgment by entering this Agreement; and

WHEREAS the parties have entered into this Agreement as a compromised settlement of their disputes, intending that this Agreement shall not be construed as an admission that any condition, policy, rule, procedure, or omission of the defendants or any of their employees or agents were or are in any way in violation of any rights of the plaintiffs;

NOW THEREFORE, the parties, by and through their counsel, hereby stipulate and agree as follows:

## SECTION I.

### *SUBMISSION TO THE COURT OF PROPOSED SETTLEMENT AND USE OF BEST EFFORTS TO OBTAIN APPROVAL AND CONSUMMATE SETTLEMENT*

1. Promptly upon execution of this Agreement, counsel for the parties shall jointly submit such agreement to the Court for its approval and recommend that the Court approve the Agreement. Counsel for both parties also shall take all steps that may be required or requested by the Court and use their best efforts to consummate this settlement and obtain the Court's approval of this Agreement.

## SECTION II.

### *NOTICE TO CLASS MEMBERS*

2. Pursuant to Rule 23(e), Federal Rules of Civil Procedure, the Florida Department

of Corrections, within ten (10) days of the Court's approval of the Notice of Proposed Settlement, attached to this Agreement as Exhibit A, shall provide notice of this Agreement to those members of the plaintiffs' class presently in the custody of the Florida Department of Corrections.

3. The "Notice of Proposed Settlement" will be posted in English and Spanish in conspicuous locations easily accessible by inmates at each facility operated by the Florida Department of Corrections or by any private contractor. Posting locations shall include all inmate bulletin boards and all general and law libraries. A copy of the Stipulation and Agreement of Settlement will be made available to inmates for inspection in the prison library system.

4. Inmates in any confinement status, including but not limited to close management, administrative confinement, and disciplinary confinement, and inmates who are housed in an infirmary or in any status that would preclude access to the designated posting areas on the date of posting, shall be individually hand delivered a copy of the notice on the date of posting.

5. The Notice shall remain posted until the date of the Fairness Hearing set by the Court.

6. The cost of translation into Spanish of the "Notice of Proposed Settlement," the cost of duplication, and the cost of distribution and posting, shall be borne by the defendants.

7. Upon completion of the posting or otherwise giving notice to all inmates, each Superintendent or his designee shall provide written notice of compliance to defendant Singletary or his designee and defendant Singletary or his designee, through counsel, shall advise the Court and counsel for the plaintiffs of the completion of the notice requirements.

8. Any communication with the court about this case shall be considered legal mail and processed in accordance with Fla.R.Admin.Code 33–3.005.

### SECTION III.

### *PROVISIONS FOR GAINTIME*

9. It is the intent of the parties that Rule 33–11.0065 be modified to provide a basis for the awarding of all elements of incentive gaintime to class members. As an initial matter, the defendants will amend Rule 33–11.0065, as indicated in Exhibit B, attached hereto.

10. Nothing in this Agreement prevents the further amending of Rule 33–11.0065, so long of the purpose and effect of the amendment does not impair the ability of class members to earn incentive gaintime as a result of their disability or handicap.

11. Nothing in this Settlement Agreement is meant to provide for an award of gaintime to an inmate who refuses to work at a job within the inmate's abilities, performs an assigned job for which the inmate is qualified in an unsatisfactory manner, commits a disciplinary infraction, or is otherwise not eligible for incentive gaintime for reasons unrelated to handicap or disability.

12. For subclass I inmates, the Department of Corrections will make retroactive gaintime awards for months in which the inmate was not provided with a work assignment or other opportunity to earn maximum gaintime awards and was not disqualified for gaintime during those months (for example, ineligible due to disciplinary reports or out-to-court status or certain sentencing provisions, etc.) Where the inmate did not receive a performance rating because he was not assigned to work, a performance rating will be provided and it shall be the same as the security rating and gaintime awarded on that basis. Any modification previously made or not made to the preliminary base gaintime award by the Correctional Proba-

tion Officer shall not be affected by this Agreement. For months prior to May 1994, when awards were limited to between zero and four days for inmates who did not work, retroactive gaintime awards will be calculated on a pro-rata basis as follows:

4 days converts to 20 days

3 days converts to 15 days

2 days converts to 10 days

1 day converts to 5 days

0 day remains 0 days

For months prior to May 1994, awards of over four days per month, which included a work component, will not be modified.

13. For subclasses II and III inmates who have used or attempted to use the grievance to seek retroactive awards of gaintime and who have contacted class counsel prior to the execution of this Settlement Agreement, the Department of Corrections will provide retroactive gaintime awards based on the formulas noted in paragraph 12. Such retroactive award will be made only where the inmate was not provided the opportunity to earn full awards. (This means that no changes need be made for Corrections Mental Health Institution before the gaintime policy was amended in July 1993 and that no changes need to be made for inmates who were given a work assignment while at a reception center.) Plaintiff's counsel will provide a list of all subclasses II and III inmates as described in this paragraph to defendants no later than 30 days after execution of the agreement by the parties.

14. The parties agree that except for the named Plaintiffs, retroactive awards will not be made prior to August 1991, the month the complaint was filed.

## SECTION IV.

### COSTS, EXPENSES AND ATTORNEYS' FEES

15. The parties agree that plaintiffs are entitled under 42 U.S.C. § 1988 to reasonable attorneys' fees, expert witness fees and expenses as part of their costs. Plaintiffs'

counsel shall submit appropriate papers to the defendants' counsel within thirty (30) days after the Fairness hearing. Counsel for the parties shall thereafter have thirty (30) days to attempt to settle all attorneys' fees, costs, and expenses. If the matter is not settled within the thirty (30) day time frame, plaintiffs' counsel shall submit appropriate papers to the Court. The aforementioned time frame for attempting to settle the fees and costs may be extended by the filing with the Court of a Joint Stipulation of Extension.

## SECTION V.

### VIOLATION OF AGREEMENT

16. The parties agree that this Agreement represents a written contract binding under state law.

17. Defendants represent that pursuant to § 944.09(1)(h) and 944.275(4)(b), Fla.Stat. (1995), they have authority to adopt policy regarding the award of gaintime and to enter into this contract.

18. Defendants further agree that in any action brought in state court to specifically enforce the terms of this Agreement, they will not interpose the defense of sovereign immunity as to the provisions of Section III.

19. Before any alleged violation of this Agreement is brought before a court, the parties shall attempt to resolve the problem among themselves.

20. Should a state court determine that the defendants have breached the Agreement, the defendants agree to pay Plaintiffs' counsel reasonable attorneys' fees and costs.

## SECTION VI.

### ADDITIONAL COVENANTS

21. This agreement shall bind all defendants in their official capacities, and their agents, servants, employees, attorneys, representatives, their successors in office, and

all other persons in active concert or participation with any or all of them who receive actual notice of this Agreement by personal service or otherwise.

22. Within sixty (60) days after a favorable ruling as a result of the fairness hearing, the parties agree to file a joint motion for dismissal of action as long as completion of retroactive relief as provided in paragraphs 11–14 of Section III of the Agreement and adoption of the proposed rule attached as Exhibit B, have been completed and resolution of counsels' fees and costs has occurred. In the event that retroactive relief, rule adoption and resolution on attorneys' fees and costs as noted above have not been accomplished within sixty (60) days of a favorable ruling, the parties agree to file a joint motion for dismissal within 30 days after completion of retroactive relief as provided in paragraphs 11–14 of Section III of the Agreement, adoption of the proposed rule attached as Exhibit B, and resolution of counsels' fees and costs.

## SECTION VII.

### *EFFECTIVENESS OF AGREEMENT*

23. This Agreement shall be effective immediately upon execution by the parties.

24. In the event that the United States Supreme Court rules that the ADA and the Rehabilitation Act does not apply to prisoners or in the event that these acts are amended to exclude prisoners, this agreement shall no longer bind the parties.

## SECTION VIII.

### *ENTIRE AGREEMENT*

25. This Agreement contains the entire agreement between the parties.

STIPULATED AND AGREED TO THIS 25 DAY OF AUGUST, 1997.

## EXHIBIT A

### *NOTICE TO ALL HANDICAPPED OR DISABLED INMATES CURRENTLY IN THE CUSTODY OF THE FLORIDA DEPARTMENT OF CORRECTIONS*

By Order of Magistrate Judge William C. Sherrill, Jr., a hearing will be held on, _____ 1997 at _____ _____. M. in courtroom number _____ at the United States Courthouse, 110 East Park Avenue, Tallahassee, Florida 32301, upon the Joint Motion of the Parties in the above-captioned case for approval by the Court of a Stipulation and Agreement of Settlement between the parties.

The class consists of all persons who are currently in the custody of the Florida Department of Corrections, or who, in the future will come into the custody of the Florida Department of Corrections, who are physically or mentally disabled or handicapped and who, because of their disability or handicap, are not provided with a job assignment, educational assignment, or other opportunity to earn the maximum available amount of incentive gain time available to all prisoners eligible to earn incentive gain time. The class has been further defined and limited and the subclasses remaining at issue are as follows:

1. Inmates who are classified X–5.

2. Inmates who are provided mental health treatment at the Corrections Mental Health Institution.

3. Inmates who are housed at a Reception and Medical Center for treatment.

As a prisoner in the custody of the Florida Department of Corrections, you may be a member of the class. The defendants, while denying liability, have engaged in negotiations which have resulted in a proposed Stipulation and Agreement of Settlement. Its terms, which will become effective upon final, non-appealable judicial approval by the Court, describe the way in which the Florida Department of Corrections will make gaintime available to class members if the Stipulation and Agreement of Settlement is approved by the Court. A copy of the entire

Stipulation and Agreement of Settlement is available for your inspection upon request to the Librarian, or other official designated by the Superintendent at the facility where you are incarcerated.

If the Stipulation and Agreement of Settlement between the parties is approved by the Court, you will be bound by its terms. The substance of the Stipulation and Agreement of Settlement provides for a modification of Rule 33–11.0065, Incentive gaintime, to incorporate provisions designed to provide a means for the awarding of incentive gaintime to class members and limited retroactive awards of incentive gaintime.

If you are satisfied with the terms of the Stipulation and Agreement of Settlement, it is not necessary that you appear at the hearing or take any other actions at this time. However, any member of the class may show cause, if any, why the Stipulation and Agreement of Settlement should not be approved as fair, adequate and proper. You may submit written comments and objections for consideration by the Court. These written comments are considered legal mail as provided for in Fla.Admin.Code R. 33–3.005. All written comments and objections, which must include the case number and case name, should be mailed to:

Clerk of the United States District Court

Northern District of Florida

*Raines v. State,* Case No. 92–40311–WS

United States Courthouse

110 East Park Avenue

Tallahassee, Florida 32301

The envelope should contain a written designation of "Raines."

You may obtain further information about this matter from the attorneys for the parties. You may write as follows:

Peter M. Siegel, Esq.

Randall C. Berg, Jr., Esq.

Florida Justice Institute, Inc.

2870 First Union Financial Center

200 South Biscayne Boulevard

Miami, Florida 33131–2310

Attorneys for the Plaintiffs

This Notice has been posted pursuant to the Order of the Court.

Dated _____, 1997.

## EXHIBIT B

### DRAFT 7–24–97

### RULES OF THE

### DEPARTMENT OF CORRECTIONS

### CHAPTER 33–11, FLORIDA ADMINISTRATIVE CODE

### MODIFICATION OF SENTENCES

### AMENDING SECTION 33–11 .0065

### INCENTIVE GAIN TIME

33–11.0065 Incentive Gain Time.

(1) through (2) No change.

(3) How credited. For inmates eligible to receive consideration under this section, the following procedures shall be used.

(a) Each inmate eligible for consideration for award of incentive gain time shall receive gain time evaluations based upon his institutional adjustment as reflected in evaluations from security, work and program components, if assigned. If it becomes necessary to make corrections to the inmate's monthly security, work or program evaluations after the evaluations have already been submitted, the request for correction along with the reasons for the correction shall be submitted in writing to the department head for ap-

proval. The approved corrections shall be submitted to the correctional probation officer or his designee who shall make the necessary changes.

1. The security evaluation is the rating of an inmate's institutional adjustment that includes evaluation of all areas of daily institutional routine with the exception of the inmate's work and program assignments. The security rating for the month shall be determined through the review of the four security behavioral objectives, while considering the inmate's capabilities. The security rating is to be determined by observations of the evaluator, notations on the inmate's Housing Officer Contact Card, and information from other staff sources regarding the inmate's behavior. The employee completing the security evaluation shall not complete the inmate's performance evaluation for the same month. The following security behavioral objectives shall be considered when completing the monthly security rating:

a. Hygiene: grooming and personal cleanliness.

b. Appearance: care of issued clothing and compliance with uniform regulations.

c. Conduct: adherence to rules, regulations, procedures, and orders and respect for others.

d. Maintenance of living quarters: appearance and cleanliness of assigned living area.

2. The performance evaluation is the rating of the inmate's performance in work and program assignments. The monthly performance rating shall be determined through the review of the ~~five~~ performance behavioral objectives, while considering the inmate's capabilities.

a. In a month in which an inmate has more than one full time assignment, the assignment of the longest duration shall be utilized for determining the ~~inmates~~ inmate's monthly performance evaluation.

b. In a month in which the full or half time assignments are of equal duration, the assignment closest to the end of the month shall be utilized to determine the inmate's monthly performance evaluation.

c. In a month in which an inmate has any half time assignments, both half time evaluations shall be completed. The half time assignment of the longest duration in both a.m. time period and the p.m. time period shall be utilized for determining the inmate's performance evaluation. In determining the work and program performance evaluation for the half time assignments, the work and program rating reflects the same rating as the two half time assignments if the ratings are the same. If the two half time ratings are different, the overall work and program evaluation shall reflect the lesser of the two ratings, except if one rating is outstanding and the other is satisfactory then the inmates rating shall be above satisfactory.

d. In a month in which the inmate:

1. Is designated a medical grade X–5, or

2. Is in medical staging at a reception center, or

3. Is housed in the Corrections Mental Health Institution, Crisis Stabilization Unit, Transitional Care Unit, Hospital or Infirmary, and

4. The status as described in 1., 2. or 3. is of a longer duration than any work or program assignment during the month, then the inmate's performance evaluation shall be derived from a rating submitted by the health care provider who has the primary health care responsibility for the inmate. The health care provider shall evaluate the inmate on the following behavioral objectives:

i. Following the treatment regimen;

ii. Adherence to health care staff instructions;

iii. Positive relationships with health care staff and other patients.

e. The employee completing the work or program performance evaluation shall not be

the same employee completing the security evaluation.

f. The following behavioral objectives shall be considered when evaluating the monthly work and program rating:

i. a. Conduct in program and work assignment: adherence to rules, regulations, procedures, and orders and demonstration of respect for others.

ii. b. Interaction with others: degree to which inmate works and participates with others to accomplish required tasks.

iii. e. Motivation for personal development and improvement: degree of interest displayed in improving skills and increasing capabilities.

iv. d. Work and study habits: willingness to accomplish tasks without being prompted.

v. e. Constructive use of time: promptness in reporting to assigned area and effective use of time.

3. through 4. No change.

(b) The correctional probation officer or designee shall evaluate the security and performance ratings which reflect the inmate's institutional adjustment for the month. The final determination of an award of incentive gain time shall be determined by the correctional probation officer or designee and shall be based on the inmate's overall monthly activities. When the correctional probation officer or designee concurs with the preliminary base gain time recommendation being applied no modification is required. The preliminary base gain time recommendation may be modified by the correctional probation officer as reflected by the inmates overall institutional adjustment and level of work and program participation for the month. The correctional probation officer or designee may modify the preliminary base gain time recommendation upward or downward from 1 to 4 days not to exceed the maximum eligible award. Any time the correctional probation officer or designee modifies the

preliminary base gain time recommendation, the reason for the modification shall be noted. These modifications will be applied to the preliminary base gain time recommendation reflective of the overall rating derived from the security and performance evaluation or security evaluation alone. Reasons for modification of the preliminary base gain time recommendation include:

1. Modification upward of 1 – 4 days excluding those inmates identified in 33–11.0065(3)(a)2.d.:

a. Participation in recommended programs and treatment if available;

b. Adherence to program or treatment plan;

c. Work or Program stability;

d. Program achievement.

2. Modification Downward of 1 – 4 days excluding those inmates identified in 33–11.0065(3)(a)2.d.:

a. Not participating in recommended programs or treatment if available;

b. Work, or Program or Treatment instability;

c. Not adhering to classification recommendations;

d. Assigned to work or program 14 days or less during the month, excluding those inmates identified in 33–11.0065(3)(a)2.d.

3. For those inmates identified in 33–11.0065(3)(a)2.d.

a. Modification upward of 1–4 days;

i. Positive relationships and contact with institutional staff other than health care staff and other patients;

ii. Adhering to the classification management plan.

b. Modification downward of 1–4 days;

i. Not developing or exhibiting positive relationships and contact with institutional

staff other than health care staff and other patients;

ii. Not adhering to the classification management plan.

(c) No change.

(4) When processed. Incentive gain time is to be processed at the end of each month or upon receipt of progress reports on inmates housed by other agencies. All incentive gain time awards should be posted in the Offender Based Information System by the close of business no later than the 12th of each month following the month of the award.

(a) No change.

(b) Inmate grievances related to the gain time award or the failure to have received notice of the gain time award shall be filed pursuant to the formal grievance process no later than the end of the month the award is posted in accordance with Rule 33–29.005 for inmates in the department's custody at the end of the month. Inmates who are out to court or in an outside hospital at the end of the month shall file grievances related to the gain time award or the failure to have received notice of the gain time award pursuant to the formal grievance process no later than fifteen days from the date of return to a the department's facility custody.

(c) A grievance concerning gain time filed by an inmate whose complaint is that the work or program evaluation failed to consider the inmate's capabilities requires that the respondent consult with the Chief Health Officer for information on the inmate's capabilities.

(d) (e) An inmate who has timely filed grievances regarding the failure to have received notice of a monthly gain time award, shall file a formal grievance relating to the gain time award itself no later than fifteen days from the date of the response to the formal grievance which addressed the failure to have received notice.

(e) (d) Grievances related to gain time awards for the months prior to the adoption of this rule shall be filed no later than August 1, 1994.

(5) through (7) No change.

Specific Authority 20.315, 944.09, 944.275 FS. Law Implemented 20.315, 944.09, 944.275 FS. History–New 2–26–80, Amended 1–12–83, 1–31–85, 10–7–85, Formerly 33–11.065, Amended 4–28–87, 7–12–89, 7–17–90, 10–16–90, 10–14–91, 2–17–93, 4–17–94, 7–17–94, 4–21–96, 6–1–97, ————.

Name of Person Originating Proposed Rule: Ellen Roberts

Name of Supervisor or Person Who Approved Proposed Rule:

Date Proposed Rule Approved: